# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID FOTI,<br><br>                   Plaintiff,<br><br>     v.<br><br>TC PIPELINES, LP, TC PIPELINES GP, INC., STANLEY GRAHAM CHAPMAN, III, NATHAN BROWN, NADINE E. BERGE, JACK STARK, MALYN K. MALQUIST, PEGGY A. HEEG, and GLORIA HARTL,<br><br>                  Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff David Foti ("Plaintiff"), by his undersigned attorneys, for this Complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against TC PipeLines, LP ("TC PipeLines") or the "Company"), TC Pipelines GP, Inc., the Company's General Partner ("TCP GP"), and the members of the board of directors of the TCP GP (collectively referred to as the "GP Board" or the "Individual Defendants" and, together with TC PipeLines, and TCP GP, the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the December 14, 2020 agreement and plan of merger (the "Merger Agreement") that TC Pipelines entered into with TCP GP, TC Energy Corporation ("TC Energy"),

1

TransCan Northern Ltd., ("TC Northern"), TransCanada PipeLine USA Ltd., ("TC PipeLine USA") and TCP Merger Sub, LLC, an indirect wholly owned subsidiary of TC Energy ("Merger Sub").

2.  Pursuant to the Merger Agreement, Merger Sub will be merged with and into TC PipeLines, with TC PipeLines being the surviving entity and becoming an indirect, wholly owned subsidiary of TC Energy (the "Proposed Transaction" or "Merger"). As a result of the Merger, TC Energy will acquire indirectly all of the outstanding common units representing limited partner interests in TC PipeLines (the "TC PipeLines common units") that TC Energy and its subsidiaries do not already own.

3.  The Conflicts Committee of the GP Board, consisting of Jack Stark and Malyn Malquist (the "Conflicts Committee"), approved the Merger Agreement, recommended that the GP Board approve the Merger Agreement, and recommended that the GP Board recommend approval of the Merger Agreement to the holders of TC PipeLines common units representing limited partner interests in TC PipeLines (a "Public Unitholder").

4.  Upon consummation of the Proposed Transaction, each outstanding TC PipeLines common unit not owned by TC Energy or any of its subsidiaries will be cancelled in exchange for the right to receive 0.70 TC Energy common shares ("Merger Consideration").

5.  On January 11, 2021, in order to convince TC Pipelines' Public Unitholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form F-4 Registration Statement with the SEC, which was subsequently amended on January 22, 2021 by Amendment No. 1 to Form F-4, and on January 25, 2021, the Company filed with the SEC a Schedule 14A Proxy Statement (together with the Form F-4 Registration Statement and the Amendment No. 1 to Form F-4, the "Proxy"), in violation

of Sections 14(a) and 20(a) of the Exchange Act.

6. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for the Company and TC Energy, and (ii) material information related to the financial analyses performed by Evercore Group L.L.C. ("Evercore"), the Conflicts Committee's financial advisor.

7. The special meeting of TC Pipelines Public Unitholders to vote on the Merger is scheduled for February 26, 2021 (the "Unitholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Proxy be disclosed prior to the Unitholder Vote, so that TC PipeLines' Public Unitholders can properly exercise their corporate voting rights.

8. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to the Public Unitholders sufficiently in advance of the upcoming Unitholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, TC PipeLines common units trade on the New York Stock Exchange ("NYSE"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

### I. Plaintiff

12. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of TC PipeLines common units.

### II. Defendants

13. Defendant TC PipeLines is a publicly traded master limited partnership organized and existing under the laws of Delaware, with principal executive offices located at 700 Louisiana Street, Suite 1300, Houston, Texas 77002-2761. TC PipeLines was formed by TransCanada PipeLines Limited ("TransCanada"), a wholly owned subsidiary of TC Energy. TC PipeLines common units are traded on the NYSE under the ticker symbol "TCP."

14. Defendant TC Pipelines GP, Inc., the Company's General Partner (previously

4

defined as "TCP GP"), is a Delaware corporation. The GP Board and TCP GP's executive officers manage TC PipeLines. TCP GP is wholly owned by TC Energy.

15. Defendant Stanley Graham Chapman, III is, and has been at all relevant times, Executive Vice-President and President of U.S. and Mexico Natural Gas Pipelines of TC Energy, and Chairman of the GP Board, effective January 1, 2019.

16. Defendant Nathan Brown is, and has been at all relevant times, President of TCP GP and a member of the GP Board, and is Vice-President, U.S. Natural Gas Pipelines Financial Services of TransCanada USA Services Inc., an indirect wholly owned subsidiary of TC Energy.

17. Defendant Nadine E. Berge is, and has been at all relevant times, a member of the GP Board, and Director of Corporate Compliance and Legal Operations of TransCanada.

18. Defendant Jack Stark is, and has been at all relevant times, a member of the GP Board and a member of the Conflicts Committee.

19. Defendant Malyn K. Malquist is, and has been at all relevant times, a member of the GP Board and a member of the Conflicts Committee.

20. Defendant Peggy A. Heeg is, and has been at all relevant times, a member of the GP Board.

21. Defendant Gloria Hartl is, and has been at all relevant times, a member of the GP Board, and Vice-President, Risk Management of TransCanada.

22. The defendants identified in paragraphs 15 through 21 are collectively referred to herein as the "GP Board" or the "Individual Defendants," and together with TC PipeLines and TCP GP, the "Defendants."

**III.     Relevant Non-Party**

23.     TC Energy is a Canadian company engaged in the development and operation of North American energy infrastructure, including natural gas and liquids pipelines, power generation and gas storage facilities. As of the filing of the Proxy, TC Energy and its affiliates owned 17,084,831 TC PipeLines common units, representing approximately 24% of the outstanding TC PipeLines common units, 100% of TC PipeLines' Class B Units, 100% of TC Pipelines' incentive distribution rights ("IDRs"), and a 2% general partner interest of the Company.

**SUBSTANTIVE ALLEGATIONS**

**I.     Relevant Factual Background**

24.     TC PipeLines was formed in 1998 to acquire, own, and participate in the management of energy infrastructure assets in the United States. TC PipeLines owns interests in eight federally regulated U.S. interstate natural gas pipelines that are collectively designed to transport approximately 10.9 billion cubic feet per day of natural gas from producing regions and import facilities to market hubs and consuming markets primarily in the Western, Midwestern and Northeastern United States.

25.     On December 15, 2020, the Company issued a press release announcing the Proposed Transaction:

> **TC PipeLines, LP announces definitive agreement
> for TC Energy to acquire all its outstanding common units**
>
> **0.70 Share-for-Unit Exchange Ratio**
>
> HOUSTON, Texas – **December 15, 2020** – News Release - TC PipeLines, LP (NYSE: TCP) (TCP or the Partnership) today announced it has entered into a definitive agreement and plan of merger pursuant to which TC Energy Corporation (TSX, NYSE: TRP) (TC Energy) will acquire all the outstanding common units of TCP not beneficially owned by TC Energy or its affiliates in exchange for TC

6

Energy common shares. Pursuant to the agreement, TCP common unitholders would receive 0.70 common shares of TC Energy for each issued and outstanding publicly-held TCP common unit. This represents a 19.5 per cent premium to the TCP closing price before the original offer as of October 2, 2020.

The conflicts committee, composed of independent directors of the Partnership's general partner, after consultation with its independent legal and financial advisors, unanimously approved the merger agreement and determined it to be in the best interests of the Partnership and its unaffiliated unitholders. Subsequently, the board of directors of the Partnership's general partner approved the merger agreement and determined it to be fair and reasonable and in the best interests of the Partnership.

The transaction is expected to close late in the first quarter or early in the second quarter of 2021 subject to the approval by the holders of a majority of outstanding common units of TCP and customary regulatory approvals. Upon closing, TCP will be wholly-owned by TC Energy and will cease to be a publicly-held master limited partnership.

The exchange ratio reflects a value for all the publicly-held common units of TCP of approximately US$1.68 billion, or 38 million TC Energy common shares based on the closing price of TC Energy's common shares on the New York Stock Exchange on December 14, 2020.

## II.     The Proxy Omits Material Information

26.     On January 11, 2021 and January 22, 2021, Defendants authorized the filing of materially incomplete and misleading Form F-4 Registration Statements with the SEC and, on January 25, 2021, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (previously defined collectively as the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's Public Unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's Public Unitholders to make an informed voting decision in connection with the Proposed Transaction, and thus the Proxy should be amended.

27. <u>First</u>, the Proxy fails to provide critical information regarding the financial projections for TC PipeLines and TC Energy, which were prepared by TCP GP and TC Energy, respectively, and utilized and relied upon by Evercore in rendering its December 14, 2020 fairness opinion.

28. The Proxy provides that, in connection with the Proposed Transaction, "TCP GP's management provided internal non-public ten-year financial forecasts regarding TC PipeLines' anticipated future operations to the Conflicts Committee in connection with its evaluations of the Merger and to Evercore for their use and reliance in connection with their separate financial analyses and opinions" (the "TCP Financial Projections").

29. In connection with its financial opinion and related analyses, "Evercore performed a discounted cash flow analysis of TC PipeLines by valuing the cash flows received by TC PipeLines based on the TCP Financial Projections during both a five-year and a nine-year period." However, the Proxy wholly omits the projected cash flows of TC PipeLines used in Evercore's analyses.

30. Rather, the Proxy provides a "Summary of TC PipeLines Prospective Financial Information" as a table of "selected unaudited prospective financial data for the fiscal years ending 2020 through 2029," which includes the following non-GAAP metrics: (i) Comparable EBITDA, (ii) Comparable FGFO, and (iii) Distributions per unit (the "Summary").[1] But the Summary fails to disclose (1) the Company's cash flows actually used by Evercore in its analyses and/or (2) the line items necessary to calculate the non-GAAP metrics provided in the Summary.

---

[1] The Proxy provides that "[f]or purposes of the unaudited prospective financial information presented above, comparable EBITDA is calculated as Revenue less expenses plus Equity Income before the impact of (i) depreciation and amortization, (ii) interest expense and (iii) income tax expense. Comparable EBITDA represents EBITDA, adjusted for unusual, non-recurring or non-operating factors on both a consolidated and segmented basis" and "funds generated from operations ("FGFO") is calculated as earnings plus (i) depreciation and amortization, plus (ii) distributions in excess from equity investments, less (ii) other expenses."

31.     Similarly, the Proxy provides that TC Energy's management also prepared non-public financial scenarios that were provided to TC PipeLines, the Conflicts Committee, and its financial advisors in connection with the Proposed Transaction. The Proxy likewise includes a "summary of certain of those financial scenarios, which [are] refer[ed] to as the 'TC Energy prospective financial information.'" The provided summary of the TC Energy prospective financial information again includes the following non-GAAP metrics: (i) Comparable EBITDA, (ii) Comparable FGFO, and (iii) Dividends per unit (the "TCE Summary"); however, the Proxy again fails to disclose all line items necessary to calculate the non-GAAP metrics provided in the TCE Summary.

32.     When a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

33.     What is more, the Proxy states that "[t]he TC Energy prospective financial information was developed *on a standalone basis without giving effect to the Merger*, and therefore the TC Energy prospective financial information does not give effect to . . . potential synergies to be realized as a result of the Merger[.]" However, the Proxy also provides that, on October 16, 2020, TC Energy uploaded into the data room six-year financial projections for TC Energy, *which reflected the pro forma company after effecting the Proposed Transaction*." In

recommending approval of the Proposed Transaction, the Conflicts Committee considered that the combined company "will have an increased scale . . . [and] stronger coverage with respect to dividends," "is anticipated to experience cost savings and other efficiencies," and that "the Merger will further strengthen the combined company's balance sheet by retaining a higher proportion of internally generated cash flow." Therefore, these *pro forma* financial projections for the combined company must likewise be disclosed.

34. The omission of the aforementioned projections and metrics renders the Proxy materially misleading and deficient, as TC PipeLines' Public Unitholders are unable to replicate management's inside view of the Company without them. Thus, the information is necessary for the Company's Public Unitholders to make an informed decision regarding their approval of the Proposed Transaction.

35. <u>Second</u>, the Proxy omits material information related to the financial analyses performed by Evercore.

36. In connection with its fairness opinion, Evercore performed a *Peer Group Trading Analysis* of TC PipeLines by reviewing and comparing the market values and trading multiples of six publicly traded master limited partnerships and C-Corps. For each of the peer group trading partnerships and companies, Evercore calculated (i) Enterprise Value/2021 EBITDA and (ii) Enterprise Value/2022 EBITDA trading multiples, and disclosed the resultant range of multiples observed. However, the Proxy fails to disclose the individual multiples observed for each company in the analysis. This information must be disclosed to make the Proxy not materially misleading and to provide the Company's Public Unitholders with full and relevant information in considering how to vote.

37. Similarly, Evercore performed a *Precedent M&A Transaction Analysis*, wherein it

reviewed 15 prior transactions and derived a range of relevant implied multiples of Transaction Value / EBITDA multiples which were used to determine an implied equity value per TC PipeLines common unit. However, the Proxy fails to disclose the individual multiples observed for each transaction in the analysis. This information must be disclosed to make the Proxy not materially misleading and to provide the Company's Public Unitholders with full and relevant information in considering how to vote.

38.     The individual multiples observed in Encore's *Peer Group Trading Analysis* and *Precedent M&A Transaction Analysis* are all the more relevant considering two publicly-disclosed letters from two significant TC PipeLines Public Unitholders. As stated in the Proxy, "[d]uring the process of considering the Proposed Transaction, TC PipeLines received communications from certain of its unitholders" that "were provided to the Conflicts Committee and its financial and legal advisors and considered by the Conflicts Committee as part of its evaluation of the Proposed Transaction." On or about October 7, 2020, Steel City Capital, LP communicated its objection and concerns regarding TC Energy's offer to acquire the Company's outstanding common units, which objections were based on a comparison of the then-implied transaction multiple compared to precedent transaction multiples. And, on November 16, 2020, KORR Acquisitions Group, Inc. (and its affiliates) echoed Steel City Capital, LP's objections, noting that TC Energy's offer fell short "[u]nder every valuation method," including a comparison of Enterprise Value/EBITDA multiples.

39.     Finally, Evercore also performed a *Peer Group Trading Analysis* for TC Energy, and the Proxy similarly fails to disclose the individual multiples observed for each company in the analysis. This information must be disclosed to make the Proxy not materially misleading and to provide the Company's Public Unitholders with full and relevant information in considering how

11

to vote.

40. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Unitholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his TC PipeLines common units in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements

therein not false or misleading." 17 C.F.R. § 240.14a-9.

44.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45.     Defendants have issued the Proxy with the intention of soliciting the Company's Public Unitholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company and TC Energy, and (ii) material information related to the financial analyses performed by Evercore.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's Public Unitholders although they could have done so without extraordinary effort.

47.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Evercore reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Evercore, as well as its fairness opinion and the

assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and TC Energy, and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Evercore's analyses in connection with their receipt of the fairness opinions, question Evercore as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

49. TC PipeLines and TCP GP are also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

50. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Unitholder Vote. Plaintiff has no adequate remedy at law. Only through

the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of TC PipeLines within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of TC PipeLines, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They

were thus directly involved in preparing this document.

55. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Unitholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a

result of their wrongdoing;

   C.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

   D.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 29, 2021

**OF COUNSEL:**

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina, Esq.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Tel.: (504) 455-1400
Fax: (504) 455-1498
E-mail: Michael.Palestina@ksfcounsel.com

*Attorneys for Plaintiff*

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*